NELSON CLEMENTS, Appellant, *v.* FRANCISCO YTURRIA. Respond-ent.

A vendee claiming title under a contract of sale, void as against public policy, cannot maintain trover unless he has had actual possession ; the contract must have been so fully executed, that his demand can be enforced at law without aid from the illegal transaction.

A constructive possession must relate to and rest upon a legal title ; it is made of acts short of possession in fact, which, supported by the legal title, amount in law to actual possession ; without a valid title, there-fore, there can be no constructive possession.

In an action for the alleged conversion of a quantity of cotton, it appeared that plaintiff, a citizen of the United States, contracted with the Confed-erate government, while that power was carrying on war against the United States, to receive cotton in payment for goods contraband of war

furnished by him to that power. Plaintiff delivered the goods, and certain bales of cotton in the hands of Confederate agents at San Antonio, were set aside and marked for him, and shipped to Matamoras by a carrier employed by the Confederate government. Plaintiff received subsequently a bill of lading. The cotton was turned over by a Confederate officer to a commercial firm who sold and delivered it to defendant. *Held*, that as plaintiff acquired no title under the contract of sale, which was illegal and void, and as he never had actual possession of the cotton, he was not entitled to recover.

(Argued April 27, 1880 ; decided June 1, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of defendant entered upon an order dismissing plaintiff's complaint on trial. (Reported below, 14 Hun, 151.)

This action was brought to recover damages for the alleged conversion of 270 bales of cotton.

In 1862, plaintiff, then a citizen and resident of this State, entered into a contract with the government of the so-called Confederate States of America, to supply them with army stores in consideration of being paid for the same in cotton, to be delivered by that government at the port where the army stores should be delivered. In January, 1865, plaintiff went to Texas, which was then in open rebellion against the United States, to see and sample the cotton which the Confederate States government proposed to send to Matamoras, in payment of army stores previously furnished by him under the contract.

The plaintiff visited San Antonio, Texas, and there saw and sampled a quantity of cotton, and made arrangements to have it forwarded to Matamoras, with one Bethel Copewood, who was one of the carriers regularly employed by the Confederate government; and the regular expense of transportation was paid by that government. All this cotton was received by a regular agent of said government at San Antonio, and was forwarded by him thence to Matamoras. It was marked P. & G., a mark used to designate the cotton set apart for plaintiff. The cotton was transported by carriers, employed by the

Confederate government, to a point on the Rio Grande, opposite Camargo. Bills of lading for this cotton were sent to William M. Perkins, at Matamoras, who was the regular agent of the Confederate government at that place; he, subsequently, delivered them to the plaintiff. It was the custom of Perkins, upon the arrival of cotton thus marked, to notify plaintiff thereof, and to deliver such cotton to him. In May, 1865, the cotton arrived at Rio Grande City, opposite Camargo, Mexico. An officer of the Confederate government, in command of that department, took possession of it, placed it in the hands of López & Garcia, a commercial firm at Camargo, who sold it to defendant, and he took possession thereof.

*J. W. Gerard* for appellant. The contract of sale was executed, and the legal title was in plaintiff at the time of the conversion; no delivery was necessary to vest the title. (*Terry* v. *Wheeler*, 25 N. Y. 520, 525; Chitty on Cont. [8th Am. ed.] 332; *Olyphant* v. *Baker*, 5 Denio, 379; *Lansing* v. *Turner*, 2 Johns. 13; *Hinde* v. *Whitehouse*, 7 East, 558; *Farling* v. *Baxter*, 6 B. & C. 360; *Shelden* v. *Parker*, 5 N. Y. Sup. Ct. 616; *Groat* v. *Gile*, 51 N. Y. 431; Benjamin on Sales, §§ 311, 313 *et seq.; Hanmer* v. *Wilsey*, 17 Wend. 91; *Hurd* v. *West*, 7 Cow. 752; *Hoyt* v. *Van Alstyne*, 15 Barb. 568.) Plaintiff had actual possession of the cotton, by virtue of its delivery to him at San Antonio, and he can maintain this action, even if the original contract under which he obtained such possession was treasonable and void. (*Maine Bank of Buffalo* v. *Fiske*, 71 N. Y. 353.) The question of public policy or immorality is not involved in plaintiff's possession or title, so far as defendant is concerned. (*Duncan* v. *Speer*, 11 Wend. 54 and note; *Armory* v. *Delamire*, 1 Smith's Lead. Cases, 470 and notes; *Whitfield* v. *The United States*, 2 Otto, 165; *Hanauer* v. *Doane*, 12 Wall. 342; *Sann* v. *Woodruff*, 15 id. 439; *Woodworth* v. *Bennett*, 43 N. Y. 273; *Robinson* v. *The International Life Co.*, 42 id. 66.) The contract between Clements and Perkins was valid, even if the latter purchased the army supplies for the purpose of delivering them to the Confederate

government. (*Tracy* v. *Talmage*, 14 N. Y. 162.)  The seizure and sale of the cotton not having been authorized by the government could not confer title.  (2 Bl. Comm. 401; *Brown* v. *United States*, 8 Cranch, 135.)  By transferring the bills of lading for the cotton, as security for advances, plaintiff did not divest himself of the title necessary to maintain this action. (*Morgan* v. *Ide*, 8 Cush. 420; *Cooper* v. *Willomott*, 1 C. B. 682; Addison on Torts, 432; *Valle* v. *Cerre's Adm.*, 36 Mo. 586–7; *Nichols* v. *Clent*, 3 Price, 367; *Kinlock* v. *Craig*, 3 T. R. 119.)  In an action of trover or trespass, a defendant cannot set up the right in another unless he justifies under it. (2 Hilliard on Torts, 33.)

*Thomas G. Shearman* for respondent.  This action cannot be maintained without proving that the plaintiff had, at the time of the alleged conversion, either the possession or the legal right to instant possession of the property converted. (*Hull* v. *Carnley*, 11 N. Y. 501; 17 id. 202; *Gordon* v. *Harper*, 7 T. R. 9; *Owen* v. *Knight*, 4 Bing. N. C. 54; *Bradley* v. *Copley*, 1 C. B. 685 ; followed in *Goulet* v. *Asseler*, 22 N. Y. 225.)  It follows that proof of the right to immediate possession at the time of conversion being vested in a stranger to the action, plaintiff not being in actual possession, is a perfectly good defense, without connecting the defendant with such stranger.  (*Rockwell* v. *Saunders*, 19 Barb. 473; *Davis* v. *Hoppock*, 6 Duer, 254; *Leake* v. *Loveday*, 4 M. & G. 972; *Gerber* v. *Monie*, 56 Barb. 652.)  Assuming that Clements' dealing with this cotton was lawful, yet no title had ever vested in him.  (*N. Y. Fireman Ins. Co.* v. *De Wolf*, 2 Cow. 56; *Champney* v. *Coope*, 34 Barb. 593; *Megary* v. *Funtis*, 5 Sandf. 376; *Bladis* v. *Free*, 9 B. & C. 167; *Graham* v. *Jackson*, 6 Q. B. 811, 837; *United States* v. *Lapere*, 17 Wall. 602; *Campbell* v. *Mersey Docks*, 14 C. B. [N. S.] 412; *Field* v. *Moore*, Hill & D. 418; *Gerard* v. *Prouty*, 34 Barb. 454; *McDonald* v. *Hewitt*, 15 Johns. 349; *Chapman* v. *Kent*, 3 Duer, 224; *Elzee Cotton Cases*, 22 Wall. 180; *Kein* v. *Tupper*, 52 N. Y. 550; *Mucklow* v. *Manges*,

1 Taunt. 218; *Andrews* v. *Durant*, 11 N. Y. 35.) If
Clements ever had any title, he had parted with it before the
time of the alleged conversion, and such title was then vested
in Asmenlaiz, who alone could have any right of action upon
the conversion. (*Curtis* v. *Marshall*, 8 Bosw. 828; *Whitta-
ker* v. *Merrill*, 30 Barb. 389.) The plaintiff had no right to
the possession of the cotton at the time of the alleged conver-
sion, and, therefore, could not recover. (*Smith* v. *Tracy*, 36
N. Y. 79; *Delafield* v. *Illinois*, 26 Wend. 192; *Gordon* v.
*Harper*, 7 T. R. 9; *Hull* v. *Carnley*, 11 N. Y. 501; *Owen* v.
*Knight*, 4 Bing. N. C. 54; *Bradley* v. *Copley*, 1 C. B. 685.)
If Clements' transactions were lawful, Yturria and his associ-
ates acquired, nevertheless, a perfect title to this cotton. (*Burt*
v. *Dutcher*, 34 N. Y. 493; *Taylor* v. *Nashville R. R. Co.*, 6
Coldw. 646; *Wellman* v. *Wickerman*, 44 Mo. 484; *Mitchell*
v. *Harmony*, 13 How. 128; *Drehman* v. *Stifel*, 41 Mo. 185;
*Yost* v. *Stout*, 4 Coldw. 205.) No action could be maintained
against a Confederate officer under such circumstances. (*Ford*
v. *Surget*, 97 U. S. 594; *Smith* v. *Brazelton*, 1 Heisk. 44;
*Cummings* v. *Driggs*, id. 67; *Stafford* v. *Mercer*, 42 Ga. 556;
*Wright* v. *Winningham*, 2 Heisk. 244; *Gunter* v. *Patton*, id.
257; *Swinerton* v. *Columbian Ins. Co.*, 37 N. Y. 174.) Before
the transfer of any title, either to Clements or Yturria, the
whole legal title to this cotton, and to the bills of lading repre-
senting the cotton, had vested by operation of law in the govern-
ment of the United States, as successor to whatever rights the
Confederate States Government might have had. (*U. S.* v.
*McRae*, L. R., 8 Eq. 69; *U. S.* v. *Huckabee*, 16 Wall. 414, 435;
*Titus* v. *U. S.*, 20 id. 475, 481; *U. S.* v. *Tract of land*, 1
Woods, 475; *U. S.* v. *Prioleau*, 2 Hem. & M. 559; *King of
Sicily* v. *Wilcox*, 1 Sim. [N. S.] 301; *Whitfield* v. *U. S.*, 92
U. S. 165.) Every step in the transactions by which Clements
claims title to this cotton being unlawful, his pretended title was
void, as having been acquired by direct violation of law. (*Mont-
gomery* v. *U. S.*, 15 Wall. 395; *U. S.* v. *Grossmayer*, 9 id. 72;
*Woods* v. *Wilder*, 43 N. Y. 164; *Clements* v. *Graham*, 24 La.
Ann. 446; *Bank of New Orleans* v. *Matthews*, 49 N. Y. 12;

*Sprott* v. *U. S.*, 20 Wall. 459 ; 6 id. 521 ; *U. S.* v. *Lapere,* 17
id. 602 ; *Desmare* v. *U. S.*, 93 U. S. 605 ; *Carlisle* v. *U. S.*,
16 Wall. 151.)

FOLGER, Ch. J.   This is an action in trover, for the conver-
sion by the defendant, of certain cotton of the plaintiff.   To
recover in trover, there must have been possession of the prop-
erty by the plaintiff, or there must be an existing right to take
immediate actual possession of it.   It is clear that if the plaint-
iff never has had possession of the property, he has no right to
have or demand possession.   The right asserted, in one view
of it, rests upon a contract made by him with the Confederate
power; while that power was belligerent with the United
States; while the plaintiff was a citizen of the latter; by which
contract the cotton was the consideration for goods, contraband
of war, furnished by him to the Confederate power.   It was a
contract grossly against public policy and void.   Judicial aid
will not be given to enforce such a contract, nor to maintain a
claim that rests solely upon it.   The proof of the contract, and
that the cotton sued for was the subject-matter thereof, does
not make out a right to take immediate possession of the prop-
erty; for the contract is void, and of itself gives no right that
the law will recognize.

But it is claimed by the plaintiff that though the contract
was illegal and void, yet it was executed ; and that he thereby
had the right to the property and to take immediate possession
of it.   There is a series of cases in the United States Supreme
Court, that seem to hold that where a claim to right springs
from such a contract as that in hand, it matters not that the
property, which is the subject-matter of the contract, has come
into the actual possession of the plaintiff, and has been taken
therefrom by the party against whom the claim is made.
" Whether executed or executory," it is said in *Montgomery*
v. *The United States* (15 Wall. 395), " it (the contract) was
illegal and void." (See, also, *Sprott* v. *United States*, 20 Wall.
459, recognized in *Whitfield* v. *United States*, 2 Otto [92
U. S.] 165 ; *Desmare* v. *United States*, 3 id. [93 id.] 605.)

Whether those cases go upon the particular requirements of the act of Congress cited in them in relation to abandoned and captured property, or whether that the United States was a party, was supposed to affect the rule to be declared, we will not inquire. As the question presented in this case is not a Federal question, we are not bound to follow those decisions, when by doing so we will depart from what is recognized as law in our own State. In *Robinson* v. *Int. Nat. Life Ass. Soc.* (42 N. Y. 54, 66), it is indicated that rights may arise from a contract void in itself as against public policy, where the contract has been carried out by the parties to it. In *Woodworth* v. *Bennett* (43 N. Y. 273), it is recognized, that if an illegal and void contract be so fully executed, as that a demand connected with it is capable of being enforced at law without aid from the illegal transaction, the claim will be sustained. (Citing Chitty on Cont. 657; *Tenant* v. *Elliott*, 1 Bos. & Pull. 3; *Merritt* v. *Millard*, 4 Keyes, 208.) The question, then, with us, is this: Did the plaintiff ever have such a right or interest in the property as that without proof of the contract he could have shown himself entitled to have immediate possession of it? It is claimed that the cotton was set apart for him and his mark put upon it at San Antonio. But he never had actual possession of it there. It was, while there and after it left there, still in the actual care, custody and control of the Confederate power by their carrying agent Copewood. It had never, in fact, been out of that custody since it first came into it. That plaintiff's mark was put upon it signified nothing, without the contract was shown to give meaning to the act of sampling by him and marking with his insignia. Could the plaintiff have taken by judicial process the cotton out of Copewood's hands, merely by proof that marks used by him to make known cotton owned by him were upon those bales? No; he would have needed to have proved the contract by which he had a right to place those marks thereon. Suppose the plaintiff had not paid the price for the cotton; would the acts of the parties, or their words, have divested the Confederate power of the right to hold until the price was paid; in other words, of the lien for

the purchase-money? (*Baldey* v. *Parker*, 2 B. & C. 37; *Smith* v. *Surman*, 9 id. 561.) And suppose that he had paid the price, and it was denied by his vendors; could he have recovered the property on proof of the facts now relied upon to show possession, and without proof of his contract? All the cases cited by the appellant to show a right of property on a sale without actual delivery, are based upon the contract to sell and deliver; and it is by virtue of the contract that, though not yet delivered in fact, it was held in them that the title had passed, and that the property was that of the vendee. There is no proof in the case, when all the testimony is read together, that the plaintiff ever had a possession of the cotton, other than a constructive one. A constructive possession is one that depends upon the contract that confers title. It is true that the plaintiff uses words that, taken alone, indicate a possession in fact; such as that his agent received this property and shipped it. But it is plain from other parts of the case that it was never in the actual, exclusive possession and control of that agent. So plaintiff says that he said to the Confederate agents that he accepted the cotton; but it was not put out of their possession and into his. His acceptance was oral only. The cotton was· spoken of as his, in varying forms of speech. It was but speech. It is plain that this meant no more than that it was cotton got together to fill the contract made with him. He says that it was delivered to him. But he never changed the location of, or personal care over it. The bill of lading was handed over to him. This was but a symbolic delivery. In short, there was never any thing made to the plaintiff, more than a constructive delivery; he never had any thing more than a constructive possession. The defendant got the cotton from Lopez & Garcia; those men got it from Confederate military officers; those officers got power over it because it was in the hands of Confederate agents; those agents had taken it as it was gathered together for them in the interior of Texas. It had never, since bought or taken by the Confederate power, been out of the actual physical control of the agents of that power. Now a constructive possession is one made up of acts short of possession

in fact, that by relation to the real legal title amount in law to a possession in fact.    But they are nothing without they relate to and rest upon the legal title.    And until the legal title is proven, they, though proven, show no right to take immediate actual possession.    In this case, no legal title could be proven, but by the contract with the Confederate power. That is shown to be void as soon as it is shown at all.    Hence the plaintiff had no more a possession that will sustain this action than he had a title that will.

This leads to an affirmance of the judgment, and shuts out the need of considering the other questions made at the argument.

All concur.

Judgment affirmed.