## ALTMAN v. WEYAND.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

CONVERSION—EQUITABLE TITLE IN PLAINTIFF.

> Plaintiff's husband subscribed to stock in a corporation in his own name, and on its insolvency joined with others in paying an incumbrance on its property and purchasing it at receiver's sale, when it was conveyed to a trustee for such purchasers. The husband became insolvent, and a receiver was appointed. *Held*, that plaintiff, in an action against the receiver for conversion for selling her husband's interest in the trust, cannot recover on proof that she was the equitable owner thereof, as the legal title was in her husband, and equities between him and his wife could not be considered in such an action.

Appeal from trial term, Erie county.

Action by Sadie Rayner Altman against George W. Weyand. From a judgment in plaintiff's favor, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Frank C. Ferguson, for appellant.
Cecil B. Weiner, for respondent.

HISCOCK, J. This is an action for the alleged conversion of certain moneys. Defendant was appointed receiver in supplementary proceedings of one Henry Altman, the husband of the plaintiff. As such he received by collection on account of, and by sale of said Henry Altman's alleged interest in, a certain mortgage the sum of $368.01. Plaintiff claims that she was and is entitled to said moneys, that defendant knew of her claim when he collected them, and therefore has been guilty of a conversion, for which an action may be brought against him personally. The facts which attended the giving of the mortgage upon which the moneys were collected, and the circumstances upon which plaintiff bases her claim to the same, as they appeared upon the trial are, in substance, as follows: In 1891 there was organized a corporation called the "Buffalo Railway Supply Company." Plaintiff's husband was a member of that company, and an original subscriber to its stock; 20 shares thereof being issued to him, for which, as between himself and the company, he paid $2,000. This stock always continued to stand in his name. He failed in business in 1897, and judgments were secured against him. It is now claimed that plaintiff's money really paid for his stock, and that it belonged to her, and that by indorsement of the certificate the same was actually transferred to her, although not upon the books of the company. Said certificate, with such indorsement and transfer, was not put in evidence. The only written evidence of the transfer was an assignment from Altman to his wife of this and other stocks as collateral security. The question of plaintiff's ownership of this stock was, however, fairly submitted to the jury, which found in her favor, and it is upon such ownership thereof that her claim to the moneys in question is made to rest. The Buffalo Railway Supply Company, above mentioned, became insolvent, and was dissolved in 1892; a temporary receiver being appointed. At the time of its dissolution it owned certain real estate, subject to certain indebtedness, liens, etc. Several people, including plaintiff's husband, who had been stockholders in the company, joined together and raised a fund with which to relieve the property of the aforementioned indebtedness and liens. The receiver then sold, and they bought, the real estate of the company. Only a portion of the stockholders were interested in the purchase. They got shares in the land in proportion to their holdings in the old company. The deed was not put in evidence, but is stated to have run directly to such purchasers, who were named as grantees in the deed and their respective interests therein specified. Henry Altman was named as one of the grantees in said deed as the owner of an undivided $4/6200$ of the property. These grantees kept the property from March, 1892, until 1896, when they sold a portion of it. The purchasers upon such sale gave back a mortgage of $10,000 for the balance of the unpaid purchase price, which, although not put in evidence, is said to have run to one Perew, as trustee for himself and the other grantors; the interest of each being specified in said mortgage as in the deed above mentioned. Perew having died in 1898, an application was made by those interested in the mortgage for the appointment of a new trustee in his place. This was after Altman had failed in business, and after de-

fendant had been appointed receiver; and then for the first time plaintiff asserted an interest in said mortgage by virtue of her ownership of the stock scrip above mentioned. This claim was noticed in the order appointing the trustee by a clause providing that Altman's interest should be paid to himself or his representatives; thus concededly leaving open the question as between him and his wife. It was upon this mortgage that defendant collected the moneys which are sought by plaintiff in this action. There was some meager and rather loose evidence about a transfer by Altman to his wife of his interest in this land and mortgage. No written transfer was put in evidence, and Mr. Altman himself, by his evidence in the record, makes it apparent that the only transfer to his wife claimed to cover such interest is and was the transfer of the stock in question, and that no specific transfer of the land or mortgage was ever made. Defendant duly moved for a nonsuit at the close of plaintiff's case, and by exceptions to the charge of the learned trial justice raised a question which we think will necessitate a reversal of the judgment in this case.

The jury were directly and specifically instructed, both in the body of the charge and by what was said in response to the exceptions of defendant's counsel afterwards, that if they found that the original 20 shares of stock mentioned were transferred to plaintiff, and that she paid for it and had had it in her possession since, it was her property, and she could recover the moneys in dispute in this action. In other words, it was held, over defendant's objection and exception, that if plaintiff in 1891 became, and afterwards continued, the owner of said 20 shares of stock, then as matter of law she was entitled to recover against defendant for conversion of the moneys collected by him upon the mortgage some time later given for the purchase price of land standing in her husband's name. Plaintiff did not, certainly as matter of law, have a legal title or right to the moneys in question. Her husband took the legal title to the real estate in his own name, and was the one represented by the trustee in the original mortgage. The most that can be said is that plaintiff was the actual owner of the stock in the defunct corporation, and that her husband took the conveyance above mentioned as such stockholder, and that therefore she is entitled to the benefits of such conveyance. This might furnish the basis for a claim and equitable action against the proper parties. Upon this question of equity, however, it is to be borne in mind that Mr. Altman and the other stockholders made the conveyance to them possible by raising a fund with which to pay off the indebtedness of and liens against said corporation and said property. It does not appear how much Mr. Altman's share of that money was, and there is no claim that plaintiff advanced it. In the absence of some explanation, and, presumptively, before plaintiff could insist, even against her husband, upon having his apparent share of such property and the proceeds thereof, she would be compelled to reimburse him for the moneys which he advanced, and which really amounted, in whole or in part, to a purchase price of the property he acquired. Her husband is not a party to this action. It is one at law, without any opportunities

for adjusting equities, and in which plaintiff must succeed by showing a legal title or right to take immediate possession of the moneys in question. She cannot succeed by virtue of her mere equitable claim against them. Byam v. Hampton (Sup.) 10 N. Y. Supp. 372; Clements v. Yturria, 81 N. Y. 286. In accordance with these views, we conclude that the portions of the charge objected to were erroneous, and that the judgment and order appealed from must be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.