[No. 18156. Department One. May 1, 1924.]

INTERNATIONAL STEVEDORING COMPANY et al., *Respondents*, v. FRANK WATERHOUSE & COMPANY et al., *Defendants*, WILLIAM T. LAUBE, *as Trustee in Bankruptcy of Frank Waterhouse & Company, Appellant.*[1]

CORPORATIONS (130, 156)—OFFICERS—REPRESENTATION OF DIFFERENT CORPORATIONS BY SAME PERSON—FRAUD—BURDEN OF PROOF—EVIDENCE—SUFFICIENCY. Loans and dealings between corporations with interlocking directorates are not invalid where, at the time the loans were made, a fair and honest agreement was made and honestly carried out by a corporation that was a solvent and going concern.

PLEDGES (3)—VALIDITY—DELIVERY AND POSSESSION—SUFFICIENCY. There was an actual and sufficient delivery of collateral pledged as security for a loan, where the treasurer of two corporations having interlocking directorates was named as trustee to hold the pledge,

[1]Reported in 225 Pac. 420.

and having a safe with different compartments assigned to each company, he took the securities from the compartment of the pledgor and put them in the compartment of the pledgee, where they remained until reissued to himself as trustee.

Appeal from a judgment of the superior court for King county, Smith, J., entered December 14, 1923, in favor of the plaintiffs, in an action to foreclose a pledge, tried to the court. Affirmed.

*Loren Grinstead* and *Bausman, Oldham, Bullitt & Eggerman* (*Arthur E. Simon,* of counsel), for appellant.

*Charles F. Munday,* for respondent.

TOLMAN, J.—This is an action in equity to foreclose an alleged pledge, made by defendant Frank Waterhouse & Company to the plaintiffs, of all of the capital stock of the Seattle Taxicab Company to secure an indebtedness of $25,000, and interest, to the International Stevedoring Company; and an indebtedness of $31,000, and interest, to the Seattle & Globe Investment Company.

From a decree granting the relief prayed for, the defendant William T. Laube, as trustee in bankruptcy of Frank Waterhouse and Company, has appealed.

Appellant here presents and relies upon but two questions: (1) That the adverse interest of Mr. Waterhouse made the contract of pledge void; and (2) that the purported pledge was invalid for want of delivery. We shall consider these points in the order mentioned, setting forth such facts only as are pertinent.

(1) Frank Waterhouse was the organizer of, and at all times the controlling head of, Frank Waterhouse & Company, a corporation. He personally owned a substantial portion of its capital stock, and about three-fourths of its stock was owned and held by the

Seattle & Globe Investment Company, also a corporation, created and controlled by Mr. Waterhouse and used as a holding company for the interests of himself and members of his family. Mr. Waterhouse was the president and a member of the board of trustees of each of these corporations, the remaining trustees of Frank Waterhouse & Company being W. H. Bogle, who was Mr. Waterhouse's attorney, Hayden Waterhouse, his son, J. C. Hayden, his brother-in-law, J. R. Lane and R. D. Smalley, the two last named having been employees of the company or of Mr. Waterhouse for many years; Smalley having arisen from office boy to the treasurership of the allied Waterhouse corporations. The Waterhouse family owned all of the capital stock of the Seattle & Globe Investment Company, and it may be conceded that Mr. Waterhouse was in a position to dominate its board of trustees and fully direct its affairs. The International Stevedoring Company was largely controlled and directed by Captain John S. Gibson, a longtime personal friend of Mr. Waterhouse, and between them there existed close, continuous and substantial business relations. Mr. Waterhouse was a stockholder and trustee of the International Stevedoring Company, and the Seattle & Globe Investment Company owned about twenty per cent of its stock. The Seattle Taxicab Company was also what may be termed a Waterhouse corporation, all of its stock being owned by Frank Waterhouse & Company, Mr. Waterhouse being its president, and Mr. Smalley its treasurer.

This is the background and basis upon which appellant's first contention rests, and it is sufficient to demand careful scrutiny of the transaction. As was said in *Westland v. Post Land Co.*, 115 Wash. 329, 197 Pac. 44, speaking of a similar situation:

"While the courts will closely scrutinize a transaction of this kind and may even suspect fraud and overreaching, yet in this state there is no insurmountable legal obstacle standing in the way of thus doing business." (Citing cases.)

This same principle is recognized in *Olympia Box & Package Co. v. Pacific Veneer Co.*, 123 Wash. 533, 213 Pac. 24, where it is further held that the burden of establishing the good faith of a transaction so consummated rests upon the party asserting it. Was the good faith of this transaction so established? The trial court so found, and after careful consideration we can find no basis of fact for a contrary view. Without attempting to set out all the evidence, or deal with each separate point which appellant presents as in his view indicating want of good faith, it will be sufficient to say that we are convinced that, at the time the loans were made, a fair and honest agreement to pledge collateral security was entered into and that the prior agreement was fairly and honestly carried out by the corporate acts of Frank Waterhouse & Company on January 3, 1921, when it was a solvent and going concern. To invalidate that act would be to condemn all and every transaction between corporations having interlocking directorates for that one reason alone, which is not the law of this state. *Sacajawea Lumber & Shingle Co. v. Skookum Lumber Co.*, 116 Wash. 75, 198 Pac. 1112, upon which appellant largely relies, touches only the familiar principle that a director of a corporation is disqualified by personal interest adverse to that of the corporation which he represents, from voting on matters involving that interest, and his vote, if so cast, will be disregarded in determining whether such a proposition has been adopted or rejected. So here, the vote of Mr. Waterhouse, and even that of his son, might be disregarded without changing the re-

sults. None other of the trustees of the pledger corporation are shown to have had the slightest personal interest, and there is an entire want of evidence that they were in any way influenced by Mr. Waterhouse or his son. We have no disposition to question the law from other jurisdictions as presented here by the appellant. The cases cited can, we think, be readily distinguished upon the facts. So clearly so that a further discussion of them is unnecessary.

(2) Was the pledge delivered? It clearly appears that Mr. Smalley, who was the treasurer of each of the allied Waterhouse corporations, kept a safe in his office in which were different boxes or compartments assigned to the use of the different companies; that when the resolution to pledge, and the directions to him to endorse and hold the stock as trustee for the pledgees, were made effective, he took the certificates of stock from the Frank Waterhouse & Company compartment of the safe, or from the place where he had kept them as treasurer of Frank Waterhouse & Company, endorsed them as directed, and put them in the iron box of the Seattle & Globe Investment Company, which was then returned to the same safe and there they remained, no one else having any access to them whatever, until he had the stock reissued to himself as trustee for the pledgees. This was an actual and sufficient delivery, complying with what was designated as the correct rule in *Hastings v. Lincoln Trust Co.*, 115 Wash. 492, 197 Pac. 627, 18 A. L. R. 583, and like cases upon which appellant relies. Again, the law is as appellant asserts, but the facts in this case do not bring him within the rule which he thinks should apply. A constructive or symbolic delivery was recognized in the *Hastings* case, but here was actual delivery of the thing pledged to the trustee for the pledgees. The mere

fact that Smalley was an officer of the pledgor company and of the Taxicab Company, whose stock was pledged, does not in any wise alter the situation.

"In order to perfect the contract of pledge the delivery need not be made to the creditor himself, but it will be sufficient if the thing pledged is placed in the hands of a third person chosen by debtor and creditor to hold for the creditor, provided such third person knows of the trust and accepts the obligation it imposes. The codes of· some states have defined the rights and liabilities of such third person, whom it designates as the pledge holder, and have closely adhered to the provisions of the French law on this subject. Under such provisions, the pledgor and pledgee may agree upon a third person with whom to deposit the property pledged, and if he accepts the undertaking, and receives compensation for so doing, he cannot exonerate himself. A gratuitous pledge holder may exonerate himself from the undertaking, by giving reasonable notice to the pledgor and pledgee to appoint a new pledge holder, and in case of their failure to agree, by depositing the property pledged with some impartial person, who will then be entitled to a reasonable compensation for his care of the same. He must enforce all the rights of the pledgee, unless authorized by him to waive them. If his undertaking is gratuitous, he assumes the duties and liabilities of a gratuitous depositary; if compensated, he assumes the duties and liabilities of a depositary for reward. The specific pledge or appropriation of goods, with intent that they shall be a security or payment, vests the property in them, as soon as deposited with a bailee, in the person to whom they are to be delivered, and the authorities seem to agree unanimously that the validity of a pledge is not affected by the fact that an agent of the pledgor is made the custodian of the property if the parties agree to such cause and he is in fact placed in possession." 21 R. C. L., p. 647, § 13.

This rule has been approved by the Federal supreme court (*Casey v. Cavaroc*, 97 U. S. 467, 24 Law Ed. 779)

and so generally followed that further citation of authority seems unnecessary.

The judgment of the trial court must be and it is affirmed.

MAIN, C. J., HOLCOMB, BRIDGES, and MITCHELL, JJ., concur.