JAY T. MCCOY, Respondent, *v.* AMERICAN EXPRESS COMPANY, Appellant, Impleaded with Others.

(Argued April 9, 1930; decided May 6, 1930.)

*William L. Wemple* for appellant. There was no pledge of the property to plaintiff's assignor because transfer of possession is necessary to create a pledge. (*Titusville Iron Co.* v. *City of N. Y.*, 207 N. Y. 203.) The goods were in the constructive possession of the agent. Possession of the agent is possession of the principal; the principal has the right to resume possession of her goods, without liability. (*Stanton* v. *Hawley*, 193 App. Div. 559; *Hale* v. *Omaha Nat. Bank*, 64 N. Y. 550; *Husted* v. *Ingraham*, 75 N. Y. 251.)

*Jacob K. Javits* and *Benjamin A. Javits* for respondent. The transfer to plaintiff's assignor of the rugs and carpets gave the latter a sufficient pledge thereof for the amount of his loan. (*Markham* v. *Jandon*, 41 N. Y. 235; Schouler on Bailments, p. 198; *Greenwood* v. *Spring*, 54 Barb. 375; *Duryee* v. *Lester*, 75 N. Y. 442.) The act of the defendant-appellant in delivering the rugs and carpets amounted to a conversion. (*Marine Bank* v. *Fiske*, 71 N. Y. 353; Story on Agency, p. 527; Lawson on Bailments, p. 114; *Casey* v. *Cavaroc*, 96 U. S. 467; *South & C. A. C. Co.* v. *Panama R. R. Co.*, 237 N. Y. 287; Judson on Interstate Commerce, p. 269; *American Express Co.* v. *United States*, 212 U. S. 522; *Adams Express Co.* v. *New York*, 232 U. S. 14; *United States* v. *Adams Express Co.*, 229 U. S. 381; Hutchinson on Carriers [3d ed.], § 80; *McEntee* v. *N. J. Steamboat Co.*, 35 N. Y. 34.)

CARDOZO, Ch. J. The plaintiff, suing as assignee in the right of one George H. Burr, brings this action to recover damages for the conversion of chattels in contravention of a special property in the subject-matter of a pledge. The existence of a pledge is the hinge on which the controversy turns.

In 1919, Olive Waite, the owner of rugs and other chattels in Paris, delivered to William G. Massarene a power of attorney empowering him to take possession of the chattels, and to sell or otherwise dispose of them in her

behalf. The chattels were subject to attachments which it was necessary to discharge. In order to lift the lien, Massarene, upon his arrival in Paris in May, 1919, applied to George H. Burr, plaintiff's assignor, for a loan of 25,000 francs, offering as security his own note for $5,000, and rugs belonging to his principal. The rugs were in a warehouse, where they had been placed by Mrs. Waite or by some one acting in her behalf. Massarene did not take them out of the warehouse and deliver them to Burr. He did not deliver to Burr any document of title, or any order on the warehouse whereby possession could be acquired. He did no more than promise that the rugs would be held as security for the loan, that in the event of a sale in Paris, he would pay the debt out of the proceeds, and that in default of such a sale he would ship the rugs to the United States in his own name by the American Express Company, and hold them until payment. On the faith of this promise, Burr, having inspected the rugs in the warehouse, made the loan of 25,000 francs, receiving from Massarene the latter's promissory note for $5,000 payable on demand.

About a fortnight later Massarene caused the rugs to be taken from the warehouse, and shipped them to New York by the defendant, the American Express Company. The bill of lading issued by the defendant described William G. Massarene as the consignor and William G. Massarene, attorney, as the consignee, and directed the goods to be placed in bond upon their arrival at the port. In a consular invoice made out at the same time Massarene, acting as agent, declared that the rugs were part of the household effects of Mrs. Waite and had been used in her Paris residence for a year and upwards, thus making it possible later to have them entered free of duty. They arrived at the port in August, 1919, and since no one appeared to claim them or to make entry at the Customs House, the Collector of Customs placed them in a bonded warehouse, where they remained until May,

1920. At that time Mrs. Waite made oath to the customs officers that the goods were household effects, owned and in use by her or her immediate family for over a year, and they were entered free of duty. At or about the same time she paid to the American Express Company the freight and storage charges, and, claiming ownership of the goods, made demand for a delivery. There was no surrender of a bill of lading, but this was unnecessary, for the only one issued was a " straight " bill of lading, and not a bill " to order." The carrier took the risk, however, that the consignee named in the bill, William G. Massarene, attorney (described in the consular invoice as attorney for Mrs. Waite), was not in fact her attorney, but had some independent right or title (*Furman* v. *Union Pacific R. R. Co.*, 106 N. Y. 579; cf. Personal Property Law, Bills of Lading, §§ 198, 199; Cons. Laws, ch. 41). To guard against those or kindred possibilities, the carrier exacted a bond of indemnity, and upon receiving it made delivery in response to the demand. Four years later, this action was begun. The defendants named were three, the express company, Mrs. Waite, and Massarene, but the last named was not summoned. The plaintiff had judgment against the two defendants served. The carrier alone appeals.

The action being for conversion, the plaintiff, to prevail, must show that through the act of the carrier in transferring possession of the rugs to the general owner, Mrs. Waite, there was a violation of a possession then held by Burr, the plaintiff's assignor, or of a right on his part to the present enjoyment of possession (*Clements* v. *Yturria,* 81 N. Y. 285, 290; *Thompson* v. *St. Nicholas Nat. Bank,* 113 N. Y. 325, 333; *Smith* v. *Smalley,* 19 App. Div. 519, 520; *Byrne* v. *Weidenfeld,* 113 App. Div. 451, 452). In brief there must be proof that Burr, either personally or by an agent, was the holder of a pledge. It is not enough that he may have been entitled to an equitable lien which

by a judgment of a court of equity could be specifically enforced (*Walker* v. *Brown*, 165 U. S. 654; *Husted* v. *Ingraham*, 75 N. Y. 251, 257). If he had such a lien, it continued to be enforcible after the rugs had been surrendered into the possession of the general owner just as fully as before. To charge the carrier with damages on the basis of a conversion there must be proof of something more. The " disseisin, which is the essence of conversion, is not a wrong against the owner in respect of his ownership. It is an infringement of the right to control or of the right to possession, which is usually an incident of ownership, but not always " (Street, Foundations of Legal Liability, vol. 1, p. 250, also pp. 231, 232, 233; Pollock, Torts [13th ed.], pp. 371, 372; 7 Holdsworth, History of the Laws of England, pp. 403, 421, 424, 430). A pledgee sues in trover because possession, actual or constructive, is an accompaniment of a pledge. What is spoken of as his special property is nothing more than his " possessory right acquired under the bailment " (Street, *supra*, pp. 253, 254; Holmes, The Common Law, p. 242). There may be wrongs to property interests without violation of a possessory right; there cannot be that specific form of wrong which is known as conversion.

We are brought back to the question, was Burr the holder of a pledge? The rule is fundamental that there is no pledge without delivery (*Casey* v. *Cavaroc*, 96 U. S. 467; *Security Warehousing Co.* v. *Hand*, 206 U. S. 415; *Buffalo German Ins. Co.* v. *Third Nat. Bank*, 162 N. Y. 163, 170; *Third Nat. Bank* v. *Buffalo German Ins. Co.*, 193 U. S. 581, 588; *Titusville Iron Co.* v. *City of N. Y.*, 207 N. Y. 203; *Ryttenberg* v. *Schefer*, 131 Fed. Rep. 313, 323; *Dublin City Distillery, Ltd.*, v. *Doherty*, 1914 A. C. 823, 842, 852). Delivery of possession is a matter of something more than words alone. Possession is not changed by the promise of the owner that he will hold the thing thereafter for the use of the pledgee (*Casey* v. *Cavaroc; Security Warehousing Co.* v. *Hand; Buffalo German Ins. Co.* v.

*Third Nat. Bank, supra*). Indeed, a pledge once accomplished may be lost if the chattel is put back without restriction in the hands of the pledgor, though the result will be different if it is returned for a temporary or special purpose (*Hickok* v. *Cowperthwait*, 210 N. Y. 137, 143; *North Western Bank, Ltd.,* v. *Poynter*, 1895 A. C. 56; *Matter of Allester, Ltd.*, [1922] 2 Ch. 211). On the other hand, distinctions have been drawn between a retention of possession by the owner, the maker of the pledge, and retention by a third person, though an agent for the owner, if he agrees with the owner's authority or consent that thereafter his possession will be in behalf of the pledgee (*Sussman* v. *Hamlet*, 12 Pick. 76; *Philadelphia Warehouse Co.* v. *Winchester*, 156 Fed. Rep. 600, 610; *Dunn* v. *Train*, 125 Fed. Rep. 221; *Bush* v. *Export Storage Co.*, 136 Fed. Rep. 918; *International Stevedoring Co.* v. *Waterhouse & Co.*, 129 Wash. 451; Williams, Personal Property [18th ed.], p. 75; 35 Harv. L. Rev. 318). An agent has custody, but not possession in the proper sense (Holmes, The Common Law, pp. 232, 233; Pollock & Wright on Possession in the Common Law, p. 56). If an agent of a pledgor is agent also for the pledgee, his custody is the possession of the one for whom he holds. We must determine whether within the meaning of these principles there was delivery of possession by Massarene to Burr.

At the making of the loan and while the rugs remained in Paris, Burr had no possession either in person or by an agent. He had not even the promise of possession. He had nothing but a promise of security, a promise that was equivalent between the parties to an equitable lien. The rugs were to be kept in a warehouse in the name of the pledgor where they had been before the loan. There was no promise by the warehouseman to Burr to hold possession for his use. There was no delivery of any order or of any document of title whereby Burr was to be placed in a position to go to the warehouse and exact possession for himself, though even this might have been

insufficient without the warehouseman's assent (*Rummell* v. *Blanchard*, 216 N. Y. 348, 353; *Selliger* v. *Kentucky*, 213 U. S. 200, 205; *Union Trust Co.* v. *Wilson*, 198 U. S. 530, 535, 536; *Hallgarten* v. *Oldham*, 135 Mass. 1, 9, 10; *Dublin City Distillery, Ltd.*, v. *Doherty, supra*, p. 847; *Hastings* v. *Lincoln Trust Co.*, 115 Wash. 492). The mere assurance by Massarene that the rugs, though left in the warehouse in the name of the pledgor, would, if taken out and sold, be deemed to be security for the debt, did not amount to a delivery, either actual or constructive (*Wrightson* v. *McArthur & Hutchisons, Ltd.*, [1921] 2 K. B. 807).

If the rugs were not in Burr's possession while they were in storage in the warehouse, the question next to be determined is whether they came into his possession or in that of any agent for his use when they passed from the warehouse to a carrier, the American Express Company. There was no promise by Massarene that Burr should have possession or any right to possession upon the shipment of the rugs or at any time thereafter. The value ($20,000) was so greatly in excess of the amount of the loan that a transfer of possession to the lender might have been an injustice to the owner. Indeed, it was of the essence of the scheme that the owner through her agent should have a continuing right to sell, and in connection with a sale to make delivery to a buyer. The promise was merely this: that Massarene in forwarding the rugs, would take the bill of lading in his own name, and hold the rugs or the substituted proceeds until the loan had been repaid. The promise was ineffective to clothe the promisee with any right to possession that could lawfully have been honored by the carrier. On the basis of such a promise Burr would be powerless to compel delivery to himself if the rugs were still intact and in Massarene's possession. Still less was he in a position to compel delivery, without the production of an order or of any document of title, while the rugs were with the carrier, an independent bailee having a possession of its own.

The action is not framed upon the theory that there has been a loss or impairment of an equitable right. Such loss or impairment, if shown, would not sustain a remedy in trover (*Husted* v. *Ingraham, supra,* at p. 259; *Altman* v. *Weyand,* 66 App. Div. 353, 357). " The case having been tried upon the theory of a conversion, the judgment in trover must be supported by the same proof that was necessary under the common law" (*Walmsley* v. *Atlas S. S. Co., Ltd.,* 168 N. Y. 533, 540). The action is framed upon the theory that at the time of the supposed conversion the plaintiff's assignor had a right to the immediate possession; that Massarene, being a mere agent, had in truth no possession, but only an agent's custody; and so that the act of the carrier in withholding possession from the the agent, the nominal consignee, was a wrong to the possession of the principal, and, therefore, a conversion. If Massarene was more than a mere agent subject to Burr's orders, if he had a possession of his own which he was entitled to maintain in opposition to Burr's commands, the wrong to him was not a conversion as to Burr, if it be thought to be a wrong at all. A conversion it was not, for there was lacking the possessory right without which conversion is impossible.

The remedy in trover failing, the question is left whether some other remedy applies. For the moment, and provisionally, we ignore the form of the complaint and the allegations of conversion. We consider merely whether the action may be sustained as one upon the case to recover damages for the infringement of an equitable right. The theory of the action will then be that there has been an impairment of a lien or of some other equitable interest through the act of the carrier in surrendering the rugs into the possession of the general owner instead of delivering them to Massarene, the person named as consignee. The beneficiary of a trust will thus be suing for the damage wrought to him through a wrong done to his trustee. If all this be taken to be permissible, and the obstacles are

many, the final difficulty remains that when once we part with the theory of a technical conversion and an infringement of possession, there is no evidence of damage. The rugs when delivered to the owner were subject to an equitable lien in favor of the plaintiff as fully as if left with Massarene. For all that appears this equitable lien was still a charge upon them, or upon the substituted proceeds, when the action was begun and even at the trial (*Husted* v. *Ingraham, supra,* at pp. 258, 259; *Hale* v. *Omaha Nat. Bank,* 64 N. Y. 550, 556). Indeed, there is nothing to show that it has ever been contested. Failing a conversion, the wrong, if any, was a nominal one, a substitution of trustees, without ensuing damage, or, at least, any that is proved (*Husted* v. *Ingraham; Hale* v. *Omaha Nat. Bank, supra*).

The judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed with costs in all courts.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.