PARKWAY MANAGEMENT Co., Respondent-Appellant, *v.* DJALMA S. WOLFSON, Appellant-Respondent.

First Department, June 24, 1969.

*Abraham H. Spilky* for respondent-appellant.

*Richard J. Stull* of counsel (*Robert A. Stull* with him on the brief; *Stull & Stull,* attorneys), for appellant-respondent.

*Per Curiam.* Both sides appeal from an order of Special Term denying summary judgment.

Plaintiff sues for the balance due on a loan. The loan agreement is set out by a promissory note for $32,000. Concededly the loan was for a lesser amount. The error arose in the course of the fairly complex transaction. It appears that defendant was negotiating to acquire the control of Seaboard Plywood and Lumber Corporation (Seaboard), a company whose stock was traded on the American and National Securities Exchanges. He owned 100 shares of this stock. He had arranged to purchase 2,400 shares from one Colin, whose shares were pledged to a bank for a loan of $6,500, by paying the loan. He had also purchased 3,100 shares on the market by orders to two brokers, which stock had not yet been delivered or paid for. The amount due on delivery was $24,671.63. The total amount for which defendant was committed was $31,171.63, which plaintiff undertook to advance to the several holders of the stock. Against this sum, however, defendant paid forthwith the sum of $1,771.63, leaving a balance of $29,400. The rough estimate of the amount plaintiff would be required to advance represented in the note was not corrected, but there is no dispute as to the amount.

The note provided that plaintiff was to retain the stock as security, including the 100 shares already owned by defendant. It further provided that in the event the market price of the collateral fell below a certain percentage of the indebtedness, plaintiff could sell the stock and any deficiency would become due. The market price of the stock did so fall and the stock was sold on the market, resulting in a deficiency of $4,669.06, for which sum this suit is brought.

Defendant pleaded three defenses: usury, violation of the Securities and Exchange Act, and conversion. The defense of usury is patently not applicable (see General Business Law, § 379, in effect at the time of the transaction) and is not here urged. It appears that defendant brought a suit in the Federal court based on the violation of the Federal statute. The court held that the statute did not apply and dismissed the action for lack of a Federal question. That leaves only the defense of conversion.

It appears that one of the brokers, Hirsch & Co. (Hirsch), with whom defendant had placed an order for 2,100 shares, only delivered to plaintiff 1,300 shares. The remaining 800 shares were not delivered because the shares in question were then in the possession of the transfer agent for transfer. Hirsch gave and plaintiff accepted an unconditional agreement from Hirsch, called in the trade a " due bill ", to deliver the stock. It is this transaction that is relied on as a conversion.

It is difficult to see how these facts can be claimed to be a conversion. At no time did defendant become entitled to possession of the stock. Hence at no time was his right to possession interfered with. This is the essence of conversion (*McCoy* v. *American Express Co.*, 253 N. Y. 477, 482; *Pierpoint* v. *Hoyt*, 260 N. Y. 26). What defendant actually relies on is a breach of contract. Assuming that the acceptance of the due bill from Hirsch instead of the stock constituted a breach, defendant failed to show any damage resulting therefrom. The only damage claimed is that until the due bill was honored by Hirsch defendant was deprived of voting powers on the shares. The so-called lost right is purely theoretical as it was not shown that there was any occasion to vote or that defendant sought or even desired to exercise any voting privilege in regard to the stock.

A factual difficulty is presented by a finding in the Federal court action. The court found that Hirsch never actually delivered the 800 shares and that the plaintiff never accounted to the defendant for them. However, the proof is clear that when Hirsch, who was the broker through whom the stock was sold, sold defendant out, he sold 5,600 shares, the entire amount, and defendant received credit therefor. No proof to the contrary was ever offered.

Plaintiff's second cause of action is for attorney's fees as provided in the note. On this an assessment is required.

The order entered March 20, 1968, should be modified on the law to grant summary judgment to plaintiff on the first cause of action for $4,669.06, and to direct an assessment of damages

on the second cause of action; and as so modified affirmed with costs and disbursements to plaintiff-appellant.

McGivern, J. (dissenting). In the presence of conflicting claims and open factual questions, I do not think Special Term exercised improper judgment in denying summary judgment to both parties herein. There is an unresolved dispute as to the actual number of shares of the stock sold. And the ramifications of the 27th finding of fact made by the Hon. Richard H. Levet in the decision rendered by him on July 13, 1967 in the action commenced by defendant in the United States District Court for the Southern District of New York are not clarified. Thus, I am unconvinced " that no material and triable issue of fact is presented ". (*Glick & Dolleck* v. *Tri-Pac Export Corp.*, 22 N Y 2d 439, 441.)

Eager, J. P., Capozzoli, McNally and Steuer, JJ., concur in *Per Curiam* opinion; McGivern, J., dissents in opinion.

Order entered on March 20, 1968, modified on the law to grant summary judgment to plaintiff on the first cause of action for $4,669.06, and to direct an assessment of damages on the second cause of action; and, as so modified, affirmed with $50 costs and disbursements to plaintiff-respondent-appellant.