ELFRIEDE L. BORDEN, Plaintiff, v. THE NEW YORK CEN-TRAL RAILROAD COMPANY, Defendant.

(City Court of the City of New York, Trial Term, January, 1917.)

Carriers — of passengers — when passenger entitled to have certain jewelry contained in hand-bag transported as " baggage "— actions — evidence — when motion to set aside dismissal of complaint made upon the pleadings granted.

A railway passenger under the contract for her own transportation is entitled to have three rings and a lavalièrre contained in a hand-bag safely transported as "baggage," and, where the carrier by a rule duly promulgated refuses to passengers the right to turn over jewelry to its exclusive custody for safekeeping, it is liable as an insurer for its safety during the journey.

Where the passenger left her jewelry momentarily upon a table in the dining car with waiter employees and other persons near by and upon returning to claim it no trace of it could be found, it cannot be said as matter of law that the loss of the jewelry was due to the passenger's own act, and in an action to recover for said loss the question as to just what plaintiff did with said jewelry and whether such act or neglect on her part was a violation of such duty, if any, of care as she owed concerning " baggage " requires the taking of testimony, and a motion to set aside a dismissal of the complaint made upon the pleadings and the opening of plaintiff's counsel will be granted and the case restored to the calendar for trial.

Motion by the plaintiff to set aside a dismissal of the complaint upon the pleadings and the opening of the plaintiff's counsel, and to restore the case to the calendar for retrial.

Ralph M. Frink, for plaintiff.

Alex. S. Lyman (William Mann, of counsel), for defendant.

Ransom, J.  This case turns upon a novel and interesting question — unadjudicated, so far as I can find, in any court — as to a common carrier's liability for the loss of baggage, under the highly organized and perfected conditions of modern railway travel.  The plaintiff passenger carried with her upon an interstate journey three rings and a lavalièrre.  She left the jewelry momentarily upon a table in the defendant's dining-car, with waiter-employees and other persons nearby.  When she returned to reclaim it, no trace could be found.  Upon the pleadings and the opening of plaintiff's counsel, I was of the opinion that, inasmuch as the passenger voluntarily retained custody of the property and herself left it exposed to theft or loss, the carrier could not be held liable, in the absence of proof warranting the inference that it had been stolen by an employee or that the carrier had been derelict in the duty owed even as to property thus inadvertently left behind.  Accordingly I dismissed the complaint, but indicated willingness to consider, upon the present motion, the propositions of law insistently urged by the plaintiff's counsel.  I now am convinced that the controversy cannot be so readily resolved, and that its just disposition requires its restoration for a retrial which will permit of the development of the full

facts and the possible submission of some issues to a jury.

In the days of old, when the stage-coach rumbled through rural England, and the passenger was seated inside the chaise, with his trunk or portmanteau on top, under the driver's watchful eye, the differentiation in the handling of property carried as freight and property carried as the baggage of a passenger had not developed to present-day significance, and the stage-coach proprietor was held an insurer of the safe transportation of the property carried, against any loss not occasioned by inevitable accident, the owner's or shipper's own act, or the public enemy. Even in this country and this state, it was held, as late as 1838, that: " The fact that the owner is present, or sends his servant to look after the property, does not alter the case." *Hollister* v. *Nowlen,* 19 Wend. 234. Justice Bronson quoted with approval the declaration by Chambre, J., in *Robinson* v. *Dunmore,* 2 Bos. & Pull. 418, that: " It has been determined, that if a man travel in a stage-coach and take his portmanteau with him, though he has his eye upon the portmanteau, yet the carrier is not absolved from his responsibility, but will be liable if the portmanteau be lost," and the New York Supreme Court of Judicature added: " The liability of a carrier (as to baggage) is like that of an innkeeper; and it was said in *Calye's Case* (8 Coke, 63), that ' it is no excuse for the innkeeper to say that he delivered to the guest the key of the chamber in which he lodged, and that he left the door open; but he ought to keep the goods and chattels of his guest there in safety.' " As the wayside inns were supplanted with more spacious hotels and the successor of the stage-coach became a whole train of steam-drawn coaches, the harshness of still holding the innkeeper or carrier

to an insurer's liability led to legal sanction of workable rules for their fairer protection. The innkeeper could no longer keep a watchful eye on the personal effects of all his guests; the carrier had ceased to be a coach-driver who rode with the baggage under his immediate scrutiny, beside and behind him. It was felt that these changed conditions should not be permitted to impose an insurer's liability for articles of great value which had not been placed where the proprietor's or carrier's subordinates could effectually look after them, or which the guest or passenger had at least been given fair opportunity to turn over to that kind of custody on the part of the innkeeper or carrier to be held so drastically liable. Thus, in the case of the innkeeper, sanction was given that he might provide and announce a place of deposit and safekeeping of the jewelry, money and especially valuable property of his guests, during their sojourn, and if, despite this provision and announcement, a guest chose to retain his valuables in his possession rather than commit them to the custody of "the safe in the office," the proprietor was relieved from insurer's responsibility for their safety. This relief was of course held operative only as to valuables which might be actually and conveniently deposited in the safe, strong-box, or place of storage, provided by the proprietor; if the latter failed to provide and give notice of facilities for this purpose, he had no exemption from his traditional liability, and it was "no excuse that he had delivered to the guest the key of the chamber in which he lodged," that the guest had the custody of the valuables, and that the guest "left the door open." *Calye's Case, supra.*

Similarly as to common carriers, the development of transportation brought differentiation in the handling of freight and baggage and tended to make imprac-

37

ticable the carrying of quantities of baggage in the coach which conveyed the passenger. If the railroad company was not to be relieved from liability in the absence of affirmative proof of misfeasance or fault, it was obvious that means must be provided for the turning over of the baggage to the actual, undivided care and custody of the carrier. Thus the system of the " checking " of baggage and its carriage in a separate car or " luggage-van " was developed; the passenger was given opportunity, through the tariffs and published notices, of " checking " his baggage and thus having it transported at the carrier's risk, as of old. If he did not take advantage of this provision and nevertheless carried his belongings with him in the passenger coach, he could hold the carrier liable for loss only by showing that the carrier's servants stole his baggage or neglected their duty of care as to its safety. 3 Am. & Eng. Encyc. of Law (2d ed.), 547, 548; *Weeks* v. *N. Y., N. H. & H. R. R. Co.,* 9 Hun, 669, 671; *Bernheim* v. *G. W. Ry. Co.,* L. R. (3 C. P. Div.) 223; *Cohen* v. *Frost,* 2 Duer, 335, 341; *Henderson* v. *Louisville R. R. Co.,* 20 Fed. Repr. 430; 123 U. S. 64; *Defrier* v. *Nicaragua,* 81 Fed. Rep. 745; *Knieriem* v. *N. Y. C. & H. R. R. Co.,* 109 App. Div. 709; *Carpenter* v. *N. Y., N. H. & H. R. R. Co.,* 124 N. Y. 53.

In other words, the carrier was not *relieved* from his traditional liability for the safe transport of baggage, and the passenger was not deprived of his right to require the carriage of his baggage at the carrier's risk. That liability was, however, given a reasonable and workable basis. If the carrier provided and announced a system of baggage " checking," whereby the passenger's valuable belongings could be turned over to the carrier's exclusive custody during the journey, the insurer's liability continued as to the articles of bag-

gage which were, or which might have been, so checked.
If the passenger refused to avail himself of the facili-
ties thus afforded and insisted on retaining possession
of such articles himself, the carrier's responsibility
was relaxed and ordinary tort rules made applicable
to such articles. If the carrier did not provide and
operate a system of " checking " and carrying articles
of baggage in its own exclusive custody, but undertook,
by rule or otherwise, to relieve itself of the necessity
of thus accepting insurer's responsibility for articles
properly transportable as baggage, the carrier
remained, as to such articles, subject to the historic
concept of its obligation, under which the carrier was
held " not absolved from his responsibility   *   *   *
if the portmanteau be lost," even though the passenger
" takes his portmanteau with him " in the stage-coach
and " has his eye upon the portmanteau." Thus in
*Munster* v. *S. E. Ry. Co.*, 4 C. B. (N. S.) 676; 140 Eng.
Reprint, 1257, the carrier promulgated and undertook
to enforce a rule that certain articles of " luggage "
should not be " checked " and carried in the " luggage-
van," at the carrier's risk, but should be transported,
if at all, in the carriage with the passenger, in his
custody and at his risk, in the absence of affirmative
proof of the carrier's dereliction. The passenger
demanded that the carrier " check " and assume full
responsibility; the carrier refused to " check; " the
goods were not placed in the " luggage-van " and were
lost; and the learned judges of Common Pleas held
that such a regulation and refusal could not absolve
the carrier from full liability. The carrier, not the
passenger, had the election as to *where* the articles of
baggage should be transported, but not as to the car-
rier's liability. The passenger had no right to choose
the *place* of their carriage, but had a right to have them

transported at the carrier's risk. The carrier's responsibility attached to them *wherever* carried, unless the carrier elected to have them carried in a separate van and permitted them to be so " checked " and carried, and the passenger nevertheless insisted on retaining possession and taking them into the passenger coach. In other words, the carrier could require the " checking " of baggage, as a mode of requiring commission to its custody as condition of its full liability; it could latterly, by a prescribed procedure, limit the *amount* of its liability for baggage in connection with the transportation of the passenger at a given rate, so long as it afforded a method by which it carried all the baggage desired by the passenger and by which the passenger, on paying an additional sum, could hold it to a full liability therefor; but it could not, by rule or otherwise, refuse to accept exclusive custody of articles properly transportable as baggage, as means of *avoiding* liability.

If these fundamentals of historical setting are correctly stated, what of the instant case? Did the defendant carrier provide and announce a method by which articles of baggage, such as those lost, could be turned over to its exclusive custody? Did the plaintiff disregard proffered facilities for safekeeping and nevertheless insist on retaining custody and possession of the articles herself, in the coach? Or did the carrier provide and announce that as to these articles of baggage, it *would not* accept custody or responsibility for them in the baggage coach during the trip? The quantity of jewelry carried by the plaintiff was reasonable in kind and value, for the purpose of the journey. As a matter of law, under the authorities reviewed by the learned Appellate Term in *Sherman* v. *Pullman Co.*, 79 Misc. Rep. 52, these articles of personal jewelry,

contained in a suitable hand-bag or mode of carriage, were articles of " baggage," which the plaintiff was entitled to have transported in safety by the defendant, under the contract for her own transportation. She had a right to hold the defendant to an insurer's liability for the safety of this jewelry during her journey; the carrier had a *right*, as we have seen, to require her to turn it over to the carrier's exclusive custody; if the carrier promulgated a tariff regulation affording such a system of " checking " and custody, the carrier was absolved if the passenger nevertheless insisted on retaining or sharing custody. The defendant, however, instead of promulgating such a rule, filed, published and put in force a rule explicitly refusing to accept such custody or responsibility at all. Its tariffs provided that " jewelry   *   *   *   should not be enclosed in baggage to be checked. The carriers issuing and concurring in this tariff will not be responsible for such articles in baggage." The defendant did not, as it might do upon present-day trains, provide a safe or other receptacle for custody of " baggage," such as jewelry, which it refused to " check " and carry in the ordinary manner; on the contrary, the carrier stood upon its explicit, affirmative refusal to accept custody of, or responsibility for, articles which the plaintiff was entitled to have transported as baggage. Of the provisions of this filed tariff, the plaintiff was of course charged with full knowledge and notice, and was not only entitled, but bound, to proceed upon the assumption of their conclusiveness as to what she might or might not do or require the carrier to do, until such tariff rule was altered by the carrier or competent regulative authority. *Atchison, etc., Ry. Co.* v. *Robinson*, 233 U. S. 173, 180; *Great Northern Ry. Co.* v. *O'Connor*, 232 id. 508, 515. The carrier having thus

not only failed to provide a method whereby she might commit her parcel of jewelry to its custody during transit, but having even notified her and all prospective passengers that it would not accept custody of such baggage at all, she of necessity reverted to the method of the traveler of the olden times and " took her portmanteau with her in the coach " and " kept a watchful eye upon it," until an inadvertent moment in the dining car brought about its unexplained loss.

Of course, the determination whether such a regulation as to the inclusion of jewelry in trunks or cases " checked " as baggage should be continued or modified in the public interest is a regulative inquiry within the province of the interstate commerce commission, rather than in the first instance of a court. ' The question here, however, is not as to the propriety or reasonableness of the tariff regulation, or what, if anything, the commission should require the carrier to do in substitution for it or modification of it.   The rule was one which the carrier *did* make; one which it had a *right* to make, if willing to accept the consequences; the question here is as to those consequences.   The rule was validly in effect when the plaintiff made her journey; the jewelry was and is " baggage " which she was entitled to require the carrier to transport as an insurer, subject only to the carrier's right to promulgate reasonable regulations as conditions of its *acceptance,* but not as accomplishment of its *complete rejection* of custody and liability.   Subject to the regulative power of the commission, the carrier had the right to prescribe by its tariff what articles of baggage it would require or permit to be " *checked* " and carried in the baggage car, as a part of the contents of trunks; the carrier had *not* the right by its tariffs or otherwise to decide what articles of baggage it would

*transport at all* or what articles might be carried as baggage. The tariff did not undertake to say that jewelry was not baggage, or that jewelry would not be transported as baggage; it only refused to passengers the right to turn over jewelry to the exclusive custody of the carrier for safekeeping. Of course, the tariff should not be construed otherwise than according to its plain purport.

There is, therefore, here no question of the plaintiff's *election,* insistence, or choice, to keep her jewelry in her own possession; the carrier affirmatively refused to take custody or responsibility. She did not " *voluntarily* " take her jewelry with her on the train; the carrier had refused to let her do *anything* else. By the same method through which it effectually notified her that she must " check " other articles of baggage or release the carrier from insurer's liability therefor, the carrier had notified her that she could not turn over the jewelry to its custody. There was then no need that she formally and affirmatively demand that the carrier do what it had notified her of its explicit refusal to do for her or any other passenger; it was not necessary that, before packing her trunk, she should go to the carrier and demand that it disregard, in her case, its published rule, nor need she tender for " checking " her trunk with the jewelry included; as we have seen, she was bound by the tariff provisions and their legal consequences, and was entitled to act on the basis of them and their consequences. The carrier could have reduced its responsibility only by similarly notifying of willingness to " check," and the regulation of refusal would seem, as in the *Munster Case, supra,* to put in operation again the common-law rule.

Nor do I think that, under the authorities, it can be

said that, as a matter of law, the loss of the plaintiff's jewelry was due to the passenger's " own act," within the purview of the historic exception to the carrier's liability for loss of freight. The circumstances of the loss of this " baggage " are plainly distinguishable from those of familiar cases where freight damage or loss was directly caused by faulty packing, the inclusion of destructive substances, the presence of the shipper's employee with the lantern which caused the fire by which the car's contents were destroyed, and similar acts disclosing the shipper's causal relationship. Under the authorities, a passenger who, inadvertently or even voluntarily, leaves baggage exposed in a place under the oversight of the carrier's employees, from which place it is stolen or lost, has not been regarded as having caused the theft or loss by his or her " own act," even where the passenger's retention of custody of articles " checkable " as baggage was wholly voluntary. *Bonner v. De Mendoza,* 16 S. W. Rep. 976; *Pullman Car Co.* v. *Matthews,* 74 Tex. 654; 2 S. W. Rep. 744; *Root* v. *Sleeping Car Co.,* 28 Mo. App. 199; *Illinois Central R. R. Co.* v. *Handy,* 63 Miss. 609; *Van Horn* v. *Kermit,* 4 E. D. Smith, 453. See, also, *Carpenter* v. *N. Y. C. R. R. Co., Munster* v. *S. E. Ry. Co.,* and other cases cited *supra.* Even under those circumstances, the carrier is liable, by the authority of the above cases, if any want of care is shown, on the part of its employees, as to property thus left exposed, and this could hardly be the rule if the passenger's inadvertent act were looked upon as having, as a matter of law, a causal relationship to the theft or loss. At least, the question as to just what the plaintiff did with her jewelry and whether such act or neglect on her part was a violation of such duty, if any, of care as she owed concerning " baggage " which the carrier

had compelled her to retain in her custody, would seem to require the development of detailed facts by the taking of evidence.

Under the circumstances disclosed, I incline to the view that the carrier is liable for the loss of baggage of which it affirmatively refused to take custody and thereby required the passenger to retain in her own custody on the train. That the passenger might instead have forwarded her jewelry by registered mail, insured parcel post, express, or bonded messenger, cannot be viewed as releasing the carrier from its own obligation to transport at its risk, under the rules above stated, all the baggage of this passenger. If it be said that the foregoing places upon the carrier plenary liability for articles which it had no opportunity to watch or care for, the answer must be that the carrier itself chose that the jewelry should not be in its own exclusive custody. And if it be urged that it is a reasonable and sensible regulation which forbids the inclusion of valuable jewelry in trunks or cases " checked " in the baggage car, that cannot, without legislative or judicial redefinition of " baggage," free the carrier from its duty to provide *some* place of safe transport for a reasonable quantity of jewelry, as alternative of its acceptance of the passenger's custody at the carrier's risk.

Under the above-stated conclusion, it is unnecessary to discuss here the question whether a sufficient showing was indicated for a submission to the jury on the issue of the carrier's negligence or the theft of the jewelry by an employee. The determination indicated upon the trial is set aside, and the case restored to the calendar for trial before me, in Trial Term, Part III, on January 29, 1917.

Ordered accordingly.