Stanley P. Danzig, J.
This is an action by airplane passengers for the full value of lost baggage checked with the defendant Varig Airlines on international air transportation and consequential damages which include mental and emotional suffering, physical discomfort and inconvenience. A claim has also been made for punitive damages.
One of the issues presented is whether defendant Varig Airlines’ handling of the baggage constituted willful misconduct so as to deny them the benefits of the limitation of liability provisions of the Warsaw Convention (49 US Stat 3000 et seq.).
*655 The plaintiffs, New Yorkers, traveling mostly by plane, were making an extended tour of South America. Their itinerary was: New York, Bogota, Lima, Asuncion, Iguassu Falls, Rio de Janiero, Manaus, Belem, Paramaribo, Georgetown and return to New York.
At Sao Paulo, the defendant airline switched the plaintiffs and their baggage to another plane which made a stop at Rio de Janiero on its way to New York. Also at Sao Paulo, a Varig employee took charge of plaintiffs’ checked baggage, assured them that it was properly checked and routed to Rio de Janiero, and gave them a baggage check. The luggage itself was marked with the flight number and destination of Rio de Janiero.
In accordance with the itinerary indicated on their tickets, plaintiffs disembarked at Rio and demanded their baggage. While the plane was still on the runway at Rio, employees of the defendant refused to remove the baggage from the New York-bound plane saying that it was too expensive to do so inasmuch as the plaintiffs were the only passengers disembarking at Rio.
As a result of the defendant’s failure to act promptly in delivering the baggage to plaintiffs in accordance with the terms of the contract, the baggage was carried to New York, and has never been recovered. Plaintiffs were forced to spend the last 18 days of their 28-day vacation without the clothing and other personal effects contained in their luggage.
Varig’s defenses seek to limit its liability based upon its tariff provisions, the Warsaw Convention, and the conditions of the contract.
Subdivision (1) of article 18 of the convention provides (49 US Stat 3019):
"The carrier shall be liable for damage sustained in the event of the destruction or loss of, or damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.”
"(T)ransportation by air * * * comprises the period during which the baggage or goods are in charge of the carrier.” (art 18, subd 2.)
The flight in question meets the definition of "international transportation” contained in article 1 of the Warsaw Convention. The provisions of the convention, therefore, govern the *656 present action. (Eck v United Arab Airlines, 360 F 2d 804, 808.)
The Warsaw Convention for the Unification of Certain Rules Relating to International Transportation by Air is a sovereign treaty, and as such is the supreme law of the land, pre-empting local law in areas where it applies. (Burnett v Trans World Airlines, 368 F Supp 1152.)
The plaintiffs’ baggage check provides that the transportation of the baggage is subject to the rules relating to liability established by the convention (§ II, art 4, subd [3], par [h]).
A presumption of liability is created by subdivision (1) of article 18 of the convention for lost or destroyed baggage, and for delay in its transportation, by article 19.
However, article 20 permits the carrier to avoid this liability by proving that "he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures.” (49 US Stat 3019) The burden of proof is thus placed upon the defendant to establish its freedom from liability. The defendant has failed to carry this burden of proof.
Subdivision (2) of article 22 of the Warsaw Convention limits the air carrier’s liability for baggage checked, without a special declaration of value, to 250 gold French francs per kilogram.
However, subdivision (1) of article 25 of the Warsaw Convention provides (49 US Stat 3020): "The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.”
In resolving the question of whether the defendant’s refusal to deliver the luggage at Rio amounted to willful misconduct it is noted that there is a duty to transport a reasonable amount of baggage in connection with the contract to transport a passenger. (Hasbrouck v New York Cent. & Hudson Riv. R. R. Co., 202 NY 363.)
The acceptance and checking of baggage implies that there is a passenger who intends to claim it at its destination. (Atlantic Coast Line R. R. Co. v Campen Bros. Co., 114 Fla 386.) And, it is generally the duty of a carrier to carry the *657 baggage on the same vehicle with the passenger. "Any other rule would be productive of great inconvenience and hardship, if not loss, and would subject travelers, often, to intolerable delays and annoyances.” (Glasco v New York Cent R. R. Co., (36 Barb 557, 562.) The rights of the traveling public "includes the right to stop and receive their baggage at any regular station or stopping place for the (vehicle) on which they may be traveling. Any regulation that deprives them of that right is necessarily arbitrary, unreasonable, and illegal.” (Pittsburgh, Cincinnati, & St. Louis Ry. Co. v Lyon, 123 Pa 140, 150.)
Varig’s refusal to discharge plaintiffs’ baggage was an intentional omission to perform their manifest duty under the terms of their contract of carriage. There was a disregard of the probable consequences in the light of common knowledge that on such flights passengers rely on the contents of their luggage for their physical comfort, enjoyment and well-being.
There was no evidence to show that the baggage was lost, stolen or misdelivered at the time that the plane was in Rio de Janeiro. The defendant acquired possession of the baggage for transportation to Rio and gave plaintiffs a baggage check.
A baggage check is prima facie evidence that the carrier has received the baggage (Earle v Cadmus, 2 Daly 237; Davis v Cayuga & Susquehanna R. R. Co., 10 How Prac 330) and in good condition. (Hannibal R. R. v Swift, 79 US 262). Aided by a presumption of continuance of that possession (Hasbrouck v New York Cent. & Hudson Riv. R. R. Co., 202 NY 363, supra), the proof established that the defendant had the power to comply with the demand of the plaintiffs for its delivery at that port. The plaintiffs had a right at that time to its immediate possession. The defendant’s refusal to make delivery of the baggage to the plaintiffs in Rio was an intentional exercise of dominion and control over plaintiffs’ property; and was inconsistent with their rights, and constituted a conversion.
The law of conversion is concerned with possession. (McCoy v American Express Co., 253 NY 477, 482.) The right to possession may be infringed by á wrongful detention. (Lewis v Ocean Nav. & Pier Co., 125 NY 341.) "The essence of the injury was that the use and possession were dealt with in a manner adverse to the plaintiff and inconsistent with his right of dominion.” (Pollack, Torts [14th ed], p 286.)
The circumstances would not save the defendant from liabil *658 ity as a converter. Its tortious intermeddling to serve its own commercial convenience was a sufficiently serious interference with the plaintiffs’ right of possession in Rio in the light of their immediate need for the baggage in fulfilling the purposes of their voyage.
It would be against public policy to permit the carrier to limit its liability for damage it caused by its own tortious conduct in converting the property for its own commercial advantage and gain to the detriment of the plaintiffs. (Glickfeld v Howard Van Lines, 213 F 2d 723, 727; Riggs v Palmer, 115 NY 506, 511.)
Willful misconduct has been defined in section 2:171 of New York Pattern Jury Instructions; in the treatise on Air Law. (Shawcross and Beaumont [2d ed], p 345). An act may be characterized as willful misconduct when there is an intent to do or to omit doing an act with knowledge that the act or omission will probably result in damage or injury.
The proximate cause of plaintiffs’ damage was Varig’s willful misconduct in refusing to unload the luggage at Rio. The obvious foreseeability of the resulting damages to plaintiffs requires the inference that those damages were intentionally inflicted.
Thus, by its own terms, the Warsaw Convention (art 25) is inapplicable to limit Varig’s liability.
A question arises as to whether foreign, Federal or State law is applicable in determining the compensable items of damage.
In Mertens v Flying Tiger Line (341 F 2d 851, cert den 382 US 816), it was determined that the compensable items of damage under the Warsaw Convention are to be determined according to the law of the jurisdiction having the greatest interest in the particular case using the law of the forum regarding conflicts of laws to make that determination. In Mertens, as here, the forum was New York and the rule of Babcock v Jackson (12 NY 2d 473), was held to govern. In Babcock (p 479), the "center of gravity” or "grouping of contacts” theory, earlier held applicable in Auten v Auten (308 NY 155) to contract actions, was extended to tort actions in determining the substantive law to be applied. The instant action sounds in both tort and contract. Having met two of the four jurisdictional requirements of article 28 (49 US Stat 3020) of the Warsaw Convention (New York being both the place of ultimate destination and the place of business of defendant *659 through which the contract was made), and given the fact that no other State is claimed to have had any contact with the transaction, New York law properly governs the elements of damages to be recovered.
With respect to clothing and personal effects, the measure of damages for articles of baggage which are lost is what they were worth for use by the plaintiff and not merely what it could be sold for in the market. (Fairfax v New York Cent. & Hudson Riv. R. R. Co., 73 NY 167; Glovinsky v Cunard S.S. Co., 6 Misc 388; Lake v Dye, 232 NY 209.)
Except with respect to precious jewels, jewelry and like articles which are suitable to the condition and circumstances in life of the passenger and intended for personal use during the journey, having regard to the purposes of the trip, may, in general, be regarded as baggage. (Merrill v Grinnell, 30 NY 594, Torpey v Williams, 3 Daly 162; Borden v New York Cent. R. R. Co., 98 Misc 574.)
As to clothing and personal effects, the owner of the chattels who is familiar with its quality and condition is credited with having some knowledge of its value and may give fin estimate of its value, without proving that she is an expert qualified to speak on the subject. (Caten v Salt City Movers & Stor. Co., 149 F 2d 428; Williamson v New York, New Haven & Hartford R. R. Co., 24 Jones & Sp 508.)
Plaintiffs testified regarding the actual value of the items they lost, based upon the purchase price of each item and its age and condition. The value of baggage totaled $2,679.
The plaintiffs also seek recovery for mental distress resulting from their being deprived of their baggage by the conduct of the defendant. Their mental distress is in the nature of humiliation and embarrassment from their being inappropriately attired in ill-fitted apparel for social affairs prearranged with dignitaries and friends of high social levels in the countries being visited. Their vacation was spoiled.
The question of whether mental distress is a proper element of damages will be considered as an action sounding both in tort and in contract.
Frequently the same facts will sustain either a tort or a contract cause of action. (Busch v Interborough R. T. Co., 187 NY 388.) "It is enough now that a pleader state the facts making out a cause of action, and it matters not whether he gives a name to the cause of action at all or even that he gives *660 it a wrong name. If this be true of the cause of action itself, it is certainly true of the ground underlying it.” (Diemer v Diemer, 8 NY2d 206, 212; Van Gaasbeck v Webatuck Cent. School Dist. No. 1, 21 NY2d 239, 245.)
The complaint is based upon willful misconduct. Recovery for mental injuries alone is not precluded in cases of willful tort. (Halio v Lurie, 15 AD2d 62, 66.) This rule has a different history from negligently caused psychological trauma and injury which, until Johnson v State of New York (37 NY2d 378), was guided by Battalla v State of New York (10 NY2d 237, 238-239; Ferrara v Galluchio, 5 NY2d 16, 21-22). The recent decision of Johnson v State of New York allows recovery for negligently caused mental injury without residual physical manifestations.
The older cases allowed recovery for mental suffering where it could be brought within the scope of some already recognized willful tort which frequently served as a more technical excuse for allowing a recovery for mental damages. (1 Street, Foundations of Legal Liability, p 470.)
Mental -injury without contemporaneous or consequential physical injury has long been a recognized element of damages in assault actions (Prince v Ridge, 32 Misc 666, 667) though there was no battery and no physical hurt, false imprisonment (Talcott v National Exhibition Co., 144 App Div 337), malicious prosecution (Black v Canadian Pacific Ry., 218 F 239) and in trespass, invasions of interest in right of privacy, seduction, mishandling dead bodies (protecting personal feelings of survivors), in dubious property rights in dead bodies Gostkowski v Roman Catholic Church, 262 NY 320 [unauthorized autopsy]; Foley v Phelps, 1 App Div 551), and willful conversion (Cauverien v De Metz, 20 Misc 2d 144).
The infliction of mental injury as a cause of action in itself has been extended to intentional acts variously characterized as flagrant, reckless, wanton, malicious. Included in this group was the illicit solicitation of sexual intercourse with mailing of obscene pictures (Mitran v Williamson, 21 Misc 2d 106); harassing by landlord of unwanted tenant (Scheman v Schlein, 35 Misc 2d 581); Preiser v Wielandt, 48 App Div 569); reckless bad advice as to insurance program (Anderson v Knox, 297 F2d 702, cert den 370 US 915) and in cases of practical jokes carried beyond reasonable bounds of propriety, outrageous collection tactics, and bullying insurance investigators.
*661 Some of the earliest cases of a separate cause of action for mental distress involved common carriers for insulting passengers and hotel guests based on breach of contract of courteous treatment or on tort. (Boyce v Greeley Sq. Hotel Co., 228 NY 106; Gillespie v Brooklyn Hgts. R. R. Co., 178 NY 347; Hamilton v Third Ave. R. R. Co., 53 NY 25; Busch v Interborough R. T. Co., 110 App Div 705, affd 187 NY 388; Ray v Cortland & Homer Traction Co., 19 App Div 530 [no infliction of physical injury].) The carriers, being under a special obligation to the public and in an unusual position to wound feelings, were under a duty to treat passengers without abuse. This rule had its origins in consideration of public policy, the public having an interest in preventing fraud, depredation and abuse to which travelers were peculiarly exposed, under circumstances requiring the traveler to repose confidence in the carrier and its employee over whom they had no control. (Hulett v Swift, 33 NY 571.)
What remedy should a traveler have for the spoiled vacation with attendant mental distress which was caused by the wrongful acts of the defendant carrier? Recovery for the lost baggage provides no compensation.
As consumers, the traveling vacationers are entitled to some realistic protection.
Requiring words of insult in public places in addition to wrongful acts of ejectment or refusal of accommodations in public callings like common carriers or hotels as a necessary ingredient for the allowance of damages for wounded feelings is quite arbitrary. To be wrongfully deprived of appropriate clothing for necessary use in public places and ceremonies can be as publicly humiliating and embarrassing as offensive language.
The protection afforded passengers for reasons of policy should be expanded to include instances where intentional conduct of a carrier or its agents or employees affects the personal interests of the passenger beyond the expected benefits of the contract. (See the language of Cardozo, Ch. J in Moch Co. v Rensselaer Water Co., 247 NY 160; Prosser, Torts [4th ed], p 618.)
Here, defendant’s breach of the contract of carriage also constituted a willful tort allowing damages for mental distress, and the only consideration would be that of proximate cause.
*662 The plane tickets which scheduled the itinerary contained sufficient information to indicate that this was a vacation trip. It was clearly foreseeable by the defendant’s employees that withholding the baggage would result in mental distress. There are areas "where the fields of tort and contract meet and are interwoven” (Prosser, The Borderland of Tort and Contract, in Prosser, Selected Topics on the Law of Torts, p 380), and there are a few instances in which the failure to perform a contract may amount to a tort with the survival of the old tort duty to serve all comers in common callings which include common carriers. A carrier remains liable in tort, as well as on the contract, for delay in delivery, loss or damage to goods shipped. (Prosser, Torts [4th ed], p 615.)
The oft-stated "general rule” that in actions for breach of contract damages for mental suffering are not allowed is considered too sweeping a generalization to be useful (McCormick, Damages, p 592). This rule does not obtain in a breach of contract action brought by a passenger against a common carrier where the breach of contract was accompanied by circumstances of insult, indignity or abuse, or other circumstances of aggravation (Gillespie v Brooklyn Hgts. R. R. Co., 178 NY 347, supra; Hamilton v Third Ave. R. R. Co., 53 NY 25; Busch v Interborough R. T. Co., 110 App Div 705, affd 187 NY 388, supra.)
Contracts are usually concerned with commercial and pecuniary matters and losses arising from their breach require that they be measured by a pecuniary standard. (McCormick, Damages, § 145.)
However, in the purchase of their tickets for the air transportation, the plaintiffs sought no commercial or pecuniary gain and the relationships of the parties and their contract affected primarily the plaintiffs’ personal and social interest.
To the extent that "a contract is made to * * * confer a particular enjoyment, the breach, so far as it disappoints in respect of that purpose, may give a right to damages appropriate to the objects of the contract.” (1 Sutherland, Damages [1882 ed], p 156.)
In a comparable case the breach of a contract to deliver a wardrobe for an ocean voyage, spoiling a vacation and causing mental distress was held to be personal and recovery for mental suffering was allowed. "It was not a business trip * * * in the expectation that it would bring returns that could be counted in dollars. The results expected were restored *663 health, entertainment, and pleasure, laudable objects for which people are willing to spend time and money”. (McConnell v United States Express Co., 179 Mich 522, 546; see, also, Ford v Atlantic Coast Line R. R. Co., 8 Ga App 295.)
"Where other than pecuniary benefits are contracted for, damages have been allowed for injury to feelings.” (5 Williston, Contracts [1937 rev ed], § 1340A; Aaron v Ward, 203 NY 351 [expulsion from bathhouse]; Smith v Leo, 92 Hun 242; 32 Notre Dame Lawyer 482.)
A realistic application of the principles set out in the case of Hadley v Baxendale (9 Ex 341, 156 Eng Rep 145; see, also, 5 Williston, Contracts [1937 rev ed] § 1340 A) provides a sound approach to this type of case.
That mental distress would follow a breach of the contract of carriage in refusing to comply with a demand for its delivery was foreseeable, and may foreseeably be supposed to have been well within the contemplation of both parties at the time they made the contract as a probable result of its breach. It is presumed that the parties contemplate the usual and natural consequences of a breach of contract at the time when it was made. (Town of Tonawanda v Stapell, Mumm & Beals Corp., 240 App Div 472, affd 265 NY 630.) If the injury sustained is one that follows the breach in the usual course of events there is sufficient reason for the party who breached the contract to foresee it. (New York Water Serv. Corp. v City of New York, 4 AD2d 209.) The question is what would have been in the contemplation of a reasonable person when the contract was made. (Losei Realty Corp. v City of New York, 254 NY 41.)
The purpose of the air voyage was clearly reflected in the plane ticket which set out the details of the itinerary.
A very substantial part of the airlines business is involved with vacationers. Air voyage, usually linked to the pleasures of vacationing in foreign lands, is a well-known subject of the promotional activities of the industry. These travelers must rely upon and repose confidence in the air carriers, their employees and agents in being properly treated with regard not only to their person but also to their baggage, the contents of which play a significant part in the enjoyment of the vacation which is the main object of the air voyage.
Fashionable apparel of proper fit and appropriate to the occasion, ceremony, activity, sport and climate is of an importance not to be ignored in our culture with relation to the *664 enjoyment of vacations. Little psychological insight is needed to appreciate that a normal person would suffer humiliation and embarrassment upon being left bereft of clothing necessarily appropriate to the social and ceremonial occasion on a planned vacation. Baggage containing these items are necessaries in the furtherance of the purposes of the air voyage and an enjoyable vacation. In order to protect the interests of those who rely on the services of others when they cannot serve themselves, this rationale should be followed. (Recovery for Mental Suffering from Breach of Contract, 32 Notre Dame Lawyer 482.) See Crisci v Security Ins. Co. of New Haven, Connecticut (66 Cal 2d 425), where recovery was allowed a policy holder for mental suffering because of the defendant’s failure to meet the duty to accept reasonable settlement.
The plaintiffs are entitled to damages for the time lost, the physical inconveniences and moneys spent in having to repeatedly return to the airport to inquire about and search for their luggage. Their journey was delayed and a part of their vacation was thwarted thereby. Time lost, delay in furtherance of a journey, and time spent in searching for property wrongfully withheld warrants a recovery therefor. (Hamilton v Third Ave. R. R. Co., 53 NY 25, supra; Bennett v Lockwood, 20 Wend 223; Cooley v Pennsylvania R. R. Co., 40 Misc 239.)
Damages are recoverable for the time and physical effort expended and inconvenience suffered in the futile endeavor to purchase replacements of clothing suitably styled and fitted in cities foreign to the plaintiffs.
The plaintiffs suffered physical discomfort and inconvenience in being deprived of their baggage because of their lack of sufficient, proper and adequate clothing, suitable to the climate, occasion, physical and social activities for the remainder of the long vacation indicated on the passenger and baggage ticket.
Physical discomfort and inconvenience caused by the defendant’s breach of contract of carriage are compensable elements of damage. (Campbell v Pullman Co., 182 App Div 931; Aplington v Pullman Co., 110 App Div 250; Lignante v Panama R. R. Co., 147 App Div 97; Odysseys Unlimited v Astral Travel Serv., 77 Misc 2d 502.)
The baggage of Hermaine K. Cohen contained medication necessary to manage her heart ailment and alleviate her physical suffering therefrom. Without the medication, this plaintiff, for the balance of the trip suffered physical and *665 mental distress. "Because of the contract relations existing between her and the defendant company, unquestionably the legal duty was imposed on the latter to use reasonable care to protect and guard her in the possession of these (medicines), and to prevent their loss.” (Bacon v Pullman Co., 159 F 1, 5, cert den 210 US 433.) In the instant case this duty was breached by the defendant’s misconduct in refusing to take steps to remove the baggage at the scheduled destination at Rio.
Defendant has raised in its defense rule 16(C) (15) of its tariff which states: "Carrier shall not be liable in any event for any consequential or special damage arising from carriage subject to this tariff, whether or not carrier had knowledge that such damages might be incurred.” However, defendant’s tariff also expressly provides at rule 2 (1) "such carriage shall be subject to the provisions of such Convention and to this tariff to the extent that this tariff is not inconsistent with the provisions of the Convention.” "Convention” is defined in rule 1 as the Warsaw Convention.
Article 19 of the convention states (49 US Stat 3019): "The carrier shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage, or goods.” To permit rule 16(C) (15) to be applied so as to prohibit plaintiffs’ recovery of consequential damages in the instant case would be inconsistent with the intent of the convention as expressed in article 19 and in article 23 which requires that any provision (49 US Stat 3020) "tending to relieve the carrier of liability or to fix a lower limit” than that specified in the convention be null and void.
No recovery is given for punitive damages. The vicarious liability of an employer for the acts of his employee does not extend to punitive damages. An employer is not liable for exemplary damages unless it is proved that there was participation in or ratification of the employee’s or agent’s wrongdoing. An analogous rule holds with respect to corporations. Exemplary damages may not be assessed against a corporation for the willful or wanton acts of a subordinate employee, except where the officers or agents in whom the executive management of its affairs is vested have participated in the wrong by ordering the particular conduct or by issuing general orders which would naturally produce such wrongdoing, or by negligence in selecting, or retaining a known unfit employee, or by ratifying the culpable conduct. (Lake Shore & *666 Michigan So. Ry. Co. v Prentice, 147 US 101; Roginsky v Richardson-Merrell, Inc., 378 F2d 832; Gill v Montgomery Ward & Co., 284 App Div 36; see Comment, 19 Syracuse L Rev 189, 191; Note, 70 Yale LJ 1296, 1300.)
Judgment for both plaintiffs for the sum of $2,679 in damages for the loss of their baggage plus $1,750 for plaintiff Hermaine Cohen for her physical inconvenience and discomfort and for mental suffering, and $1,500 for Charles Cohen for physical inconvenience, discomfort and mental suffering sustained by him, together with costs and interest from July 18, 1974.